I'm good. Okay, 7-2057, Hylete v. Hybrid Athletics. Mr. Rollins, please proceed. Good morning, Your Honors. May it please the Court. My name is Patrick Rollins. I represent the appellant, Tylee. I'd like to reserve three minutes for rebuttal. In the trial below, the Board excluded opposers' registration. So this case is about what common law rights were initially pleaded and subsequently asserted at trial and how the Board erred in its consideration. You argue that the TTAB compared the wrong marks in conducting its analysis and the TTAB should have compared the Hylete mark to the Hybrid mark along with the words Hybrid Athletics and 11 dots below it. I'm quoting from the blue brief on that. And you say the record evidence only demonstrates that Hybrid Athletics used the mark along with the words and dots. And again, that's blue brief at 11, so 10 and 11. But the record shows several photos of athletic apparel displaying the Hybrid mark without the words or the dots. I can give you JA-337, for example, and you know they're in there. Given the presence of the Hybrid mark on athletic apparel without the words or dots, does your argument that the TTAB compared the wrong marks fail? No, it doesn't fail, Your Honor, because each and every instance of a use of the standalone H-only logo on athletic apparel is after applicant's priority date. Okay. Where in the record did you raise this argument? We mentioned this in our reply brief. Okay. Give me a site, okay? And you can do it on response. Okay, yes. So it's important to note at the outset that there are two separate marks that are evidenced at trial. The first is a standalone H-only logo mark and the second is a poser's composite mark, which is the H logo with the words Hybrid Athletics underneath and then the 11 dots underneath the words. So, Counselor, we're looking at a waiver situation here. Where did you argue the composite mark? Well, we argued the composite mark in our reply brief. Your reply brief. Yeah, yeah. And in the we didn't specifically raise this in our principal brief, but as mentioned by the Beckton Dickinson, the C.R. Bard case from this court, if there's a plain error of law that this court may revisit issues that were passed on in an opening brief. And that's the case. So you're conceding that you passed on it in your opening? We did not raise the waiver issue in our opening brief. We raised the waiver issue in response to, in our reply brief, in response to the opposer raising the waiver issue. I'm not talking about the waiver issue. I'm referring to the composite mark. Did you make arguments that included hybrid's composite mark? The mark, the H plus, the other markings on there. Yes, in our opening brief, we referred to that argument where we talked about the fact that the board compared the wrong marks in its initial and DuPont analysis. Regarding the instances of actual confusion presented by a hybrid and the TTAB, adopted, you say there are only instances of temporary confusion that had no effect on purchasing decisions. I'm quoting from Blue Brief 22. But the confusion of a number of individuals was only dispelled after someone from Hy-Leet or hybrid athletics revealed to them that the Hy-Leet mark was not associated with hybrid athletics. And you agree that's in the record. It's at 982.83, 1172.38.01. So I assume you agree with that. You're nodding, but you have to articulate. Yes, it's in the record. And one individual purchased Hy-Leet athletic apparel and wore it to an event hosted by the founder of hybrid, hoping to please the founder, thinking they were supporting hybrid athletics. Why shouldn't we consider those instances to represent actual confusion? Well, Your Honor, in this case, we don't even get to the actual confusion analysis because the board... But that's not my question. They are examples of actual confusion, aren't they? Well, no. Each one of the examples that were included were addressed in our brief, and we don't believe that they rise to the level of actual confusion. Why? Well... Why, if somebody buys a shirt and wears it to an event thinking that they're supporting the company holding the event, and it's the wrong shirt with the wrong logo, why isn't that actual confusion? Well, if it was actual confusion, the TTAB should not have clear error by comparing the... You're not answering my question. Why isn't that actual confusion? Well, I concede maybe that is actual confusion. But the main point is that the TTAB made clear error here when considering the standalone H-Only logo in its DuPont analysis. There's no evidence in the record of the standalone H-Only logo being used prior to Paddington case. Paddington case is a precedential case from the TTAB, and the board was bound to follow that case. And in looking at the actual evidence of record, the only evidence of use of a logo on athletic apparel prior to applicant's first use date is the composite mark. But weren't you arguing from the very beginning that the comparison was between your mark and the standalone hybrid mark? That's the legal error that the board made. No, that was your argument, wasn't it? Our argument was that the board made legal error by comparing the standalone H-Only logo to applicant's mark. That's the argument you're making now, the argument you made below. Did you ever argue that the comparison should be made between your mark and the composite common law mark of hybrid? We did not make that argument below, and the reason we did not make that argument below is because... Now why isn't that waiver then, now? It's not waiver because the board sui sponte raised and considered the common law rights. Those common law rights were not asserted. I see that, and that may be a problem, but I'm having a bigger problem in that you never raised the argument. Yeah, we did not raise that argument in our trial. Why is that not waiver? Forget about what the board ultimately did, but why is that not waiver? Why should we be... Why should we entertain your argument here today that you didn't make below? Well, in this case, you know, both parties were expecting the opposition proceeding at trial to be based on the registrations, and opposer failed to make the registrations of record, and so all of the briefing is directed toward the registrations, and the common law rights were not even asserted in the opposers trial brief. So if we look at the opposers trial brief, there is no assertion of common law rights for apparel goods, and so we didn't have an opportunity... Once pictures were introduced, and those pictures do show a composite common law right markings, why didn't you raise the argument then? I mean, it seems to me that you should have been aware at that point that the parties were proceeding on one basis. Now there's evidence before the TTAB that should be addressed. Well, that evidence was, in our view, being presented for purposes of priority initially, and then once the registrations were discussed, then the priority issue went away because the registrations had a first use date. So we didn't argue that the issue with respect to waiver, or with respect to the composite mark, because of the registration. You were aware of the composite mark, correct? Yeah, we were aware that the composite mark was part of the evidentiary record. I don't understand why you didn't even raise an alternative argument, or you just stuck with your single argument that the comparison was between your mark and the standalone H mark of hybrid. Yes, those were the issues that were addressed below. Those were the issues that were advanced at trial, and those were based on the registration, which is... That's the problem. Why isn't that waiver? If you didn't make the arguments below, then why isn't that waiver? Well, the reason it's not waiver is because the opposition proceeding below was proceeding with respect to the registrations, and then the registrations were not made of record, and so at trial, the TTAB's sua sponte raised the common law rights. The common law rights were not asserted at trial, so we didn't have an opportunity to raise this issue at trial. We didn't have an opportunity to dispute that. So what's the TTAB to do? Are they to base the decision on the arguments that's made by the parties, or come up with different arguments? Well, the TTAB properly excluded the registrations, and so what the TTAB should have done is examined the record to determine if the common law rights had been appropriately pleaded and had been appropriately asserted at trial. Correct, and the evidence that before the TTAB at that point showed the composite marking, and my question is why at that point in time, why weren't you alerted to the fact that you had a problem, that you had only been addressing the standalone mark and nothing else? Well, if you're referring to our trial brief, your honor, we didn't have an opportunity to dispute the common law rights because... Can I ask you to I don't have that here at the podium, but I'm not familiar with this page. Can I ask you, appellee, to lend him your copy of the appendix? You really shouldn't come to court without appendix, or at least without an electronic way to access it. You gave it to us, you thought it was important, I brought it. I apologize, your honor. Page 99 of the appendix. In paragraphs two and three, and we'll focus on paragraph three in particular, this is the notice of opposition. Opposer and or his protester adopted the H, now that's not the composite mark, that's just the H by itself, right? H only logo. Trademark at least as early as August 1st, 2008, and has been using the trademark continuously since that time for the goods and services listed in paragraphs one and two. Why isn't that putting you on notice of their common law mark rights in the H only logo? This does put us on notice, your honor, at the pleading stage. However, the rights have to be also asserted at trial, and so if we contrast this page with appendix 4380 and 4381, at those pages there's a clear contrast between what rights are being pleaded at the initial stage and asserted at the trial stage. And in the trial brief, what opposer says is they set forth their registration for the services, they set forth their registration for the apparel goods, and then separately they set forth common law rights with respect to gym equipment. But they do not separately set forth any common law rights with respect to athletic apparel. But doesn't it say fitness equipment and athletic apparel in the first sentence at the top of page 4381? Can you lend him your other appendix, please? 4380 to 4381. Those are the exact pages you just told me to reference, correct? Yeah. So at the top of 4381, doesn't it say the H trademark on fitness equipment and athletic apparel in that parentheses? Yes, this is referring to the registration, your honor. So this is where opposer asserted the registration for athletic apparel, and then below that is the paragraph which addresses the common law rights that were asserted, and that's only with respect to gym equipment. No, at the top, but right above it, it says the application matured into a registration. I'm sorry, I'm at the bottom of 380. Claiming a date of first use in interstate commerce of at least December 31st, 2018, or 2008, and then in parentheses, it says fitness equipment and athletic apparel. So they're claiming their first use of this mark, aren't they? No, this is merely just, well, this is claiming the first use as set forth in the registration. So this paragraph right here is only putting the applicant on notice that they are asserting rights with respect to the registration. So they only asserted the registration in the paragraph above for the services, and in that paragraph that you're referring to, that crosses over 4380 and 81, that's asserting the registration with respect to apparel goods. You argue that the TTAB completely ignored the evidence of a crowded field of similar letter marks, Luffy 26. But the TTAB says, quote, the only evidence you relied on consists of a listing of registrations that were submitted for the first time with your brief and accordingly were not properly of record. That's JA 14. Are you attempting to introduce extra record evidence on appeal? No, Your Honor, we're not trying to do that. You abandoned that? Okay. Back to 4381. So I'm confused. You say the paragraph that spans 4380 and 4381 is the paragraph addressing the registration, correct? And that's limited to the composite mark. Then you say the next paragraph that appears on 4381 is the assertion of common law rights. Is that correct? For gym equipment, yes. No, because it says, in addition to clothing and fitness services, opposer also uses the trademark on a variety of gym equipment. How in the world do I not read that as an assertion that this trademark they're talking about in this paragraph, which is just the H alone, not the composite mark, the common law mark. How in the world do I read that sentence as not applying it to clothing and fitness services? Well, that clause at the beginning is clearly referring to the two paragraphs immediately before, which is referring to the registrations. And that clause alone certainly isn't sufficient to put an applicant on notice that they're asserting their common law rights. Really? After the notice of opposition clearly asserted common law rights on clothing? You think that when the notice of opposition clearly asserts common law rights on clothing, and then when we have this statement in the actual briefing, you don't think you were ever sufficiently put on notice? I mean, I think I'm with Judge Reyna. The difficulty for me is a waiver problem for you, because I should probably agree with you on the merits that the PTO made a mistake, but I don't think you made the argument. And the difference is I do think you were on notice of it in multiple instances. So I don't know what to do with that. Well, I see I'm running out of time, so I'll reserve the remainder of my time. Absolutely. I'll restore some. You actually went over your time, because we asked you questions, but I'll restore some time for rebuttal. May it please the court. My name is Michael Cosma from the Whitmire IP Group on behalf of Hybrid Athletics, and with me today is Benjamin Lowers, an attorney for the firm, and Mr. Orlando, owner of Hybrid Athletics. Now, so if the argument wasn't waived, what is your response to whether or not the PTO erred in only comparing the H marks? Your Honor, so first, at the notice of opposition, we asserted, Hybrid Athletics asserted... No, no, no. You're addressing waiver. I said, assume it wasn't waived. So what is your response on the merits to the problem that has been identified in the PTO's analysis? So, Your Honor, if you look at Appendix 4380, which we were just discussing with Hylie's counsel, Section 3, Statement of the Issue, before the Trial and Appeal Board, it says, The issue presented in this opposition is whether the Board should refuse registration of Applicant's Mark Logo because it so resembles Opposer's H trademarks, that when used and registered in connection with Applicant's Goods, they could cause confusion, cause mistake, or deceive pursuant to, and this is where it's important, Section 43A of the Lanham Act, 15 U.S.C. 1125A. That section is solely common law rights. 1114 covers likely confusion under registered rights. So the State, the reason this wasn't in our briefs is because on replies brought for the first time, there was no sua sponte. This was not addressed sua sponte by the Board. The sole Statement of Issue, Hybrid put forth to the Board was common law rights. Was any part of the Board's decision based on the common law rights? I'm sorry, Your Honor? Was any part of the Board's decision based on the composite common law markings of hybrids mark? No, the Board's decision was on the record evidence. But the record evidence has pictures, and those pictures include the 11 stars or whatever that is, includes the common law composite marking. Correct? Correct. So there's evidence before the Board that shows the common law composite markings, and I'm being told now that the Board ignored that evidence? How do I know that the Board did not make its decision based on the common law markings? The Board did not ignore the evidence. But how do I know that? How do I know that? How do I know that the Board did not rely? And I'm saying that because the evidence before the Board does include those markings. Well, so the evidence before the Board, we had apparel, we had fitness services, and there was fitness equipment. 2008, in our trial brief, Hybrid proved a priority date for fitness services and apparel going back to 2008. If you look at the evidence on appeal and the testimony, trial testimony, the fitness services, Mr. Orlando, he would advertise his apparel and his services on videos online. And in those videos, if you look at them, he would regularly work out in front of the broad hybrid H in the background of all his videos. That is not the common law H with hybrid athletics and 11 dots. Look at appendix 12. Yes, sir. So we have five pictures here. All of them show the composite common law mark of hybrid. Was this picture part of the evidence? Yes, sir. This is part of the evidence. Okay, so there's evidence before the Board of the composite common law marking, correct? Yes. So how do we know that the Board did not base its decision? It either ignored evidence before it or it relied on evidence that was before it. And either way, it seems to be a problem. Well, Your Honor, we're looking for substantial evidence on appeal. And on appeal here, we have the apparel arguments for the apparel with H hybrid athletics under it and 11 dots. We also have evidence of common law use in relation to the fitness services that Mr. Orlando provided going back to 2008, where he'd advertise his fitness services while he would post videos and in his gym and pictures with just the H, not hybrid athletics under it. And if we look at, for instance, other evidence on appeal before the Board, I mean, some of these videos are, for instance, Appendix 3881. This would be Mr. Orlando working out in front of the H. He would post these videos and that video would advertise his services. And then other ones, for instance, before the priority date of Hiley or before use of Hiley, Mr. Orlando's website, Appendix 4259. Well, but their argument, unless I misunderstand it and I may, is that you did use the H alone on fitness services, but you didn't use the H alone on clothing. Or at least there's no evidence that you were asserting in this trial that the H alone, as opposed to the composite mark, was used on clothing. And so I don't think that 3881, which I have open, saves you from that argument. Because for common law, you agree, don't you, for common law rights, that you only get rights on the actual types of goods that you use the mark on. Right. And so I don't see any evidence in this record of use on clothing of the H alone for common law rights to be attached. Is there anything I'm missing? Is there something you can point me to prior to the date at issue? Yes, Your Honor. So if we look at a picture of hybrid athletics website, and this is Appendix 4228. And now, the use of a trademark, it doesn't have to be on the goods. It could also be in relation to the selling of the goods. And if we at Appendix 4228, here's a hybrid athletics website. So here, and this is before Hylete's use, on the top of the website, it displays the H on the left. And on the right, it says hybrid athletics. And then it has 11 dots under that hybrid athletics. It's not the same use that merely ports do. Then it goes on. We see we have the services. We have workout of the day. Then we have the hybrid store. And that's a link on the top. And if you see on the bottom, or on the right-hand side, you have shop hybrid. And here, you have a picture of just the H with the hybrid athletics stone molds. You have the equipment underneath with the H. And it goes down. And it goes to now the shirts. So the trademark's being used in every way. It's being used in hybrid athletics. It's being used the H alone. And it's being used in the stacked style. Do you have a better picture of that shirt? Are you asserting that the shirt is the H alone? I'm not, Your Honor. What I'm saying is the trademark's being used. This website is advertising services, apparel, equipment. It's advertising all three. So it's showing the trademark is being used on the website in three different ways that we can see just here. We see the H on the left of hybrid athletics. The H is standing by itself. And then on the right is hybrid athletics. Then you have the H by itself. And then you're looking at the equipment. But under that, you do have the stacked H on the clothes. But it's being used in multiple ways. The H on the clothes is what? Is it an H alone? No, it's the stacked version. However, it's showing multiple uses. And then if you look at the trial testimony where the actual confusion, for instance, Jason Layden, when he testified of his confusion, he received the highly goods. He testified that I saw the highly H. He's pointed to the H as deposition if you look at the exhibit. And then he said I was confused with hybrid athletics H. No one testified that they were confused. No testimony that was relied on by the board was regarding to the common law stacked H. People knew that the H alone functioned as a trademark. So if you look at how a trademark functions, it's what does the consumer see? If you look at our hybrid athletics testimony, people associate the H, the hybrid athletics H, with hybrid athletics. Yeah, there was plenty in there. So it's in the eyes of the consumer. And so the trademark, the H, functions as a trademark by itself. Regardless of whether the H is above the hybrid athletics or how it's shown on apparel, it's in the eyes of the consumer. And we have the evidence of the H being in the eyes of the consumer as identifying with hybrid athletics. We also have the equipment. And if you look at the equipment, Mr. Orlando sells stone molds that were used in strongman portions of CrossFit. They sold to gyms across the country. And the gyms make their stones. And we have testimony that if you travel around the country and walk into a CrossFit gym, you will see Mr. Orlando's stones. And if you look at the pictures of the stone, the hybrid H is predominantly on the top of the stone. So every time someone uses one, they see the hybrid H. The H by itself functions as a trademark. It's used as a trademark. If we look at just the website as one example, it's used in many next to the, when someone's shopping for the apparel, you're seeing equipment and apparel. And the H is being used in many different ways. So it functions as a trademark. I'd like to also move on to- The board didn't make any fact findings, right? How something is being used or functioning as a trademark. And we can't do that on appeal. The board didn't make those fact findings that you're stating right now. You're telling me I should feel confident or comfortable with the board's decision for all these reasons that the board didn't articulate. And all those reasons sound like fact findings to me, and I don't get to do that on appeal. I agree, Your Honor. I'm pointing to substantial evidence. I'm pointing to evidence that was before the board- But the board didn't cite any of that evidence or make any of those fact findings about how a particular trademark was being used. It is on the record and it was relied on to the board. So these- Where in the board's decision does it have anything that valid testimony of confusion, for example? Where- I'm sorry, Your Honor. Where do they say we're relying on that evidence? On the evidence I just showed you today. It is on the record in appeal, and then- I understand. Yeah, it's not specifically cited. I agree, Your Honor. But this was before the board. It was in a testimony cited by the board. It- Each of the deponents, the trial testimony was- They were shown just the age and they identified it with hybrid athletics. So that- I understand that. That's not what we're asking. I suppose your argument is we can look at what the board could rely on because it's evidence of record. That's correct, Your Honor. Substantial evidence. But there's also evidence in the record of the composite mark. Isn't that substantial evidence, too? Or why is that not substantial evidence? There is no evidence on record that that is- that that together functioned as a trademark by itself. Highly points to no evidence. This is all attorney argument for the first time in appeal that the composite mark functions as a trademark together. There's no evidence that that's the trademark. Well, is that your registration? Don't you have a registration on the composite mark? No, we do not, Your Honor. You don't have- Okay, you don't have a- No, the registration is on just the age and there's a registration of hybrid athletics. But like I said, the age- Do you own the registration? Yes, Your Honor. Hybrid athletics owns the registration. But the registrations were not relied on. In the statement of issue, it's only common law rights. In the statement of facts, we discussed the registrations and the board correctly pointed out that they were not of evidence, but that was not relied on. It was just in the facts section, not in the statement of issue, and it was discussed. And then what's important is if we were not relying on common law rights, we- or if we were relying on the registration solely, we wouldn't have to prove priority. If you look through our briefs, we proved priority for each piece of- for apparel, fitness services, and equipment. And the reason we did that, because it was common law rights we were relying on. And now there's sections of the brief that So I just- I'm still kind of confused and you need to help clarify this. Did the board- did the board or not make any part of its decision on the common law composite mark? No, Your Honor. The board's decision solely discusses the age. Now, the board did point to apparel, for instance, and if you look at that apparel, it does have the stack mark, but- So did the board consider the- did it consider or did it not consider the composite common law mark? It did consider it as- So it was part of its decision. It did consider it. Yes, but it's considering it solely for the age is what you're saying. Yes, the board looked at the facts, looked at all the evidence, and when weighing the facts- How do we know that? Where does a board say, I'm not looking at anything else, I'm just looking at the age? Well, that's the whole board's analysis is on the age. Now, if it was before the board, and this is where the waiver issue comes in, we would know. I see. So what you're saying is that the common law mark that you assert is the age? Yes, Your Honor. And the fact that there's anything else surrounding the age is irrelevant to the board because you're only asserting the age. That's correct, Your Honor. And then on appeal for the first time, this common law and then, you know, comes up, which is not- which was on- Why doesn't the evidence of the record, though, go contrary to that assertion? I mean, so you have a party saying consider only the age, but yet there's pictures and there's evidence that says that- that shows that the common law mark that's being used is more than just an age. So the evidence is more than just what- because we have all the testimony evidence of what the consumer sees. So when people are testifying on their confusion or the facts surrounding certain circumstances, they identify just the age as the trademark. And that's the evidence. Now, if you look at the apparel, there is that- that the age is on top of hybrid athletics. There's no evidence of that function as a trademark together. Highly put no evidence forward that that is- that complete image is the trademark. There is no evidence of record. In a situation like that, isn't there case law that says that the- that the board should consider the mark in its entirety? The board did consider mark in its entirety. It's cited to the- But- but not- not with respect to the common law composite marking. There's no- there's no evidence that the board didn't consider that. The evidence is that the board did consider it. It's cited to the- the- the uses. It's cited to the equipment use. It's cited to the fitness services use and the apparel use. And in taking that evidence and weighing that evidence, it came to its conclusion that there was a likelihood of confusion. All right. Okay, well, we're out of time. I'm going to restore a minute and a half of time for rebuttal, because we went about a minute and a half over with you. So, let's restore that and give him a little rebuttal time. Okay, thank you, Your Honor. I'll be brief. I do, in fact, have a copy of the appendix in electronic form. So, I just wanted to mention that. So, first of all, we know that- that a poser did not assert the common law rights because a poser admitted this, and it's a brief to this court. And I would point to the opposer's brief, both on page 14 and again on page 20, where, in paraphrase, the opposer says that the board proceedings were never about common law rights. And that's what a poser said in its brief to this court. So, we know that a poser did not assert its common law rights at trial. Where are you citing to? I'm citing to a poser's brief on page 14 and page 20, where a poser says that the board proceedings were never about common law rights. And then, with respect to the dissecting of the common law mark, of the composite mark, it would be legal error for the board below to dissect the composite mark and excise out only the standalone, the H-only logo, and then proceed with this DuPont analysis based on a dissected mark. So, the thing you're saying about it on page 20 is where they actually assert the opposition below was never about hybrid's use of a composite common law mark. Is that what you're talking about? Yes, and also on page 14. What about the next sentence on 14? Accordingly, not only does substantial evidence support the board finding that hybrid has common law rights in the eighth grade model. Well, of course, they're going to argue that in this brief. The important part is the admission that the trial below was not... Yes, because it goes to the intent of the poser in setting forth what rights it was asserting at trial. This is an admission that a poser did not assert its common law rights at trial. It's clear that the board committed legal error here in its analysis by raising and then considering the waived common law rights. Go to page 14. Who do you represent? Haile. Read from what you're reading. One second, your honor. I can bring up that document. Do that. You don't have a copy of your brief either, Counselor? I do. I have it all here, but I'm going to... Go to the last full paragraph on that page. Your opposing counsel put it in front of you. Yes, I have it. All right. What's it say? Haile never raised this issue with the board. Haile never contested hybrids common law trademark rights. The board's proceedings were never about the extent of hybrids common law rights or whether the logo was confusingly similar. They're saying you didn't assert it. Well, we didn't assert it because it wasn't asserted by them, right? Yes, it was. It's in their initial pleading. In the pleading, but the pleading has to be combined with the trial brief, right? So it's clear that an opposer can plead rights and then waive those rights. This is the Alcatraz case. This is precisely what it stands for, is that if rights are pleaded, but they're not asserted at trial, then those rights are waived. Okay. Anything further? I thank the counsel for their argument. This case is taken under submission. All right. Thank you very much.